# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ESTATE OF CAMILLE C. TATTOLI, et al., | : |
|  | : |
| Plaintiffs, | : Civil Action No. 22-6570 (GC) (JTQ) |
|  | : |
| v. | : **MEMORANDUM OPINION** |
|  | : **AND ORDER** |
| HOME DEPOT U.S.A., INC., t/a THE HOME DEPOT, et al., | : |
|  | : |
| Defendant. | : |

This case involves a sad set of facts and the unfortunate death of Camille Tattoli following a trip and fall at Defendant's store. Plaintiffs now ask this Court to find that Defendant destroyed the mat Ms. Tattoli tripped on intending to spoliate evidence thereby requiring the imposition of various sanctions related to the alleged spoliation. The Court concludes that the facts presented here do not show that evidence was spoliated. Nor have Plaintiffs convinced the Court that any requested sanction is warranted. For these reasons, and those detailed further below, Plaintiffs' motion is denied.

## I.    BACKGROUND

Plaintiffs, Estate of Camille C. Tattoli, deceased by Executor, David Tattoli, and David Tattoli, as Executor for the Estate of Camille C. Tattoli ("Plaintiffs"), allege that on February 26, 2022, Ms. Tattoli slipped on "a mat and/or rug that was not affixed to the floor and that was placed on a small section of the regular/permanent concrete surface area by defendant Home Depot, U.S.A., Inc t/a The Home Depot

("Defendant" or "Home Depot") and maintained in a dangerous and hazardous manner." ECF No. 1, Complaint ("Compl.") ¶ 9. As a result of "the mat and/or rug that was not affixed to the floor," Plaintiffs claim that Ms. Tattoli "hit her face, head, and neck against an adjacent appliance, and suffered severe injuries which ultimately led to her death." *Id*. Plaintiffs allege that Defendant "was aware of obvious facial and head trauma" yet failed to respond properly to ensure Ms. Tattoli received medical treatment. *Id*. ¶¶ 13-14. Ms. Tattoli was disabled for ten days following the alleged fall and died from her injuries on March 8, 2022. *Id*. ¶ 20. On November 10, 2022, Plaintiffs initiated a wrongful death and survival action against Defendant *See generally*, Compl. Plaintiffs seek to recover the benefits to which they claim they are entitled for Defendant's allegedly negligent conduct. *Id*. ¶¶ 27-28, 34-35.

On February 29, 2024, Plaintiffs filed a motion seeking leave to amend the Complaint. ECF No. 20. With their proposed amendments, Plaintiffs sought to add causes of action for fraudulent concealment and intentional spoliation of the mat they allege caused Ms. Tattoli to fall. *See id*. After oral argument on July 17, 2024, the Court denied Plaintiffs' motion under Rule 16, finding that Plaintiffs failed to demonstrate good cause for amendment. ECF No. 31. The Court held that in the months that passed since filing the initial Complaint, Plaintiffs failed to exercise diligence and made no effort to uncover where the mat at issue was. Under Rule 15, the Court found undue delay and held that Plaintiffs made an insufficient showing that the amendment would be in the interest of justice. In denying the motion to

amend, the Court noted that Plaintiffs could bring a later motion for sanctions seeking the appropriate relief. *Id.*

Now, in the pending motion for sanctions, Plaintiffs submit that Defendant knew through its employees that Ms. Tattoli tripped and fell over a floor mat in its store and intentionally cut up the mat with a knife and threw it away "before it could be discovered and inspected." ECF No. 49, Plaintiffs' Moving Brief ("Mov. Br.") at 6.[1] Plaintiffs argue that Defendant knew or reasonably should have known that the mat would become evidence. *Id.* at 18-28. They contend that the destruction violated Defendant's affirmative duty to preserve the mat (*id.* at 28-33) and caused Plaintiffs substantial prejudice (*id.* at 33-43).

In opposition, Defendant contends that Plaintiffs have failed to demonstrate spoliation occurred. ECF No. 61, Defendant's Opposition Brief ("Opp. Br."). Defendant argues the mat was innocently discarded in the normal course, consistent with Defendant's standard practice. *Id.* at 15. Home Depot claims there was no way to know litigation was probable because Ms. Tattoli insisted that she was fine and declined assistance after she fell. *Id.* at 17, 19. Defendant further contends Plaintiffs will not be prejudiced as there was nothing unique about the mat that would prevent the use of an exemplar. *Id.* at 26.

In reply, Plaintiffs submit Defendant acted in bad faith since there is "no world in which" cutting up the mat before discarding it was unintentional or a mistake. ECF No. 56, Plaintiffs' Reply Brief ("Reply Br.") at 7-8. In its permitted sur-reply,

---

[1] The pages cited herein are those provided by PACER.

Defendant reiterates that it was not on notice of the severity of Ms. Tattoli's injuries or potential litigation at the time it discarded the mat (ECF No. 62, Defendant's Sur-Reply ("Sur-Reply") at 3), thereby undermining any argument of intent.

As a result of the spoliation alleged, Plaintiffs move to have the Court enter an Order precluding Home Depot's defense on all aspects of liability at trial, precluding the testimony of Home Depot's liability expert, Robert J. Palmay, P.E., and imposing an adverse inference.

## II.    LEGAL STANDARD

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably for[e]seeable litigation." *Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004). The Third Circuit has held that there should be separate deliberations on spoliation and spoliation *sanctions. Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 74 n.5 (3d Cir. 2012). This is because sanctions are only appropriate when a party has first demonstrated "there is evidence that a party's spoliation of evidence threatens the integrity of this Court." *Mosaid Techs. Inc.*, 348 F. Supp. 2d at 335.

In this Circuit, "[s]poliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and[] the duty to preserve the evidence was reasonably foreseeable to the party." *Bull*, 665 F.3d at 73. "The party seeking sanctions bears the burden of proof as to each element of the prima facie claim."

4

*Kuhar v. Petzl Co.*, 2018 WL 6363747, at *5 (D.N.J. Nov. 16, 2018), *report and recommendation adopted*, 2018 WL 6331675 (D.N.J. Dec. 4, 2018). And "this is not a balancing test – ergo, every element must be met." *Id.*

Only once spoliation has been established, specifically when a duty to preserve evidence had been triggered, can a court next examine whether sanctions should be imposed for spoliation. *See Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008). Spoliation sanctions "serve a remedial function by leveling the playing field or restoring the prejudiced party to the position it would have been without spoliation." *Mosaid Techs. Inc.*, 348 F. Supp. 2d at 335. "They also serve a punitive function, by punishing the spoliator for its actions, and a deterrent function, by sending a clear message to other potential litigants that this type of behavior will not be tolerated and will be dealt with appropriately if need be." *Id.*

The "key considerations" for determining whether sanctions are appropriate are: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *State Nat'l Ins. Co. v. Cnty. of Camden*, 2011 WL 13257149, at *3 (D.N.J. June 30, 2011). Potential sanctions for spoliation include: "dismissal of a claim or granting judgment in favor of a prejudiced party; suppression of evidence; an adverse inference, referred to as the spoliation inference; fines; and attorneys' fees and costs." *Mosaid Techs. Inc.*, 348 F. Supp. 2d at 335. Dismissal or suppression of evidence are

the two most drastic sanctions because they "strike at the core of the underlying lawsuit" and should therefore "only be imposed in the most extraordinary of circumstances." *Id*.

## III.  ANALYSIS

For the reasons provided herein, Plaintiffs have failed to demonstrate that any evidence was spoliated or that, even if evidence were spoliated, any sanction should be imposed against Defendant.

### A.  Plaintiffs Have Not Established Spoliation.

First, Plaintiffs have failed to establish that evidence was spoliated. To make a sufficient showing of spoliation, Plaintiffs are required to meet *each* of the four elements—(1) the evidence was in the party's control, (2) the evidence is relevant to the claims or defenses in the case, (3) there has been actual suppression or withholding of evidence, and (4) the duty to preserve the evidence was reasonably foreseeable to the party. *Bull*, 665 F.3d at 73. Plaintiffs have failed to demonstrate two of the four necessary elements.

### i.  The Mat Was In Defendant's Control.

The first factor is uncontested. In fact, Defendant expressly provides, "Home Depot does not dispute that it was in actual control of the mat." Opp. Br. at 12. Thus, the first spoliation element is easily satisfied.

### ii.  The Mat Is Relevant to Plaintiffs' Claims.

The Court also has no trouble finding the second element satisfied because the mat at issue clearly is relevant to Plaintiffs' claims. Defendant's arguments to the

6

contrary fall flat.

Defendant contends that "the mat was not materially different from numerous other mats in the store" and therefore "no more relevant [ ] than any exemplar mat." Opp. Br. at 13. Whether the actual mat that Ms. Tattoli indisputably tripped over is relevant cannot seriously be contested. The points Defendant raises on other possible exemplars goes to whether Plaintiffs were "*prejudiced* by the unavailability" of the original mat, not relevance. *Bistrian v. Levi*, 448 F. Supp. 3d 454, 479 (E.D. Pa. 2020). As such, the second spoliation factor has been met.

### iii.   Defendant Was Under No Duty To Preserve The Mat.[2]

The next element involving duty is a critical one.  And, on the facts here, it is one Plaintiffs cannot meet.

It is settled that "[a]n independent duty to preserve relevant evidence arises when the party in possession of the evidence knows that litigation by the party seeking the evidence is pending or probable and the party in possession of the evidence can foresee the harm or prejudice that would be caused to the party seeking the evidence if the evidence were to be discarded." *Nagy v. Outback Steakhouse*, 2024 WL 712156, at *3 (D.N.J. Feb. 21, 2024). "When a party argues that spoliation occurred before the complaint was filed, the court must conduct a fact-sensitive inquiry to determine at what point the spoliating party reasonably should have anticipated the litigation." *Bistrian v. Levi*, 448 F. Supp. 3d 454, 468 (E.D. Pa. 2020).

---

[2] The Court addresses the spoliation factors in the order they were argued by Plaintiffs rather than the order in which the Third Circuit identified them in *Bull,* 665 F.3d at 73.

This inquiry is governed by a "flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *Nagy*, 2024 WL 712156 at *3.

When conducting this "flexible[,] fact-specific" review, *id.*, Courts consider a variety of factors, including:

> the type and seriousness of the injury; how often similar kinds of incidents lead to litigation; the course of conduct between the parties, including past litigation or threatened litigation; and what steps both parties took after the incident and before the loss of the evidence, including whether the defendant initiated an investigation into the incident.

*Bistrian*, 448 F. Supp. 3d at 468 (internal quotation marks omitted). "[T]he reasonable foreseeability standard is objective," meaning whether a party plans to file suit at the time of the alleged incident is not determinative. *Id.* at 471. "If [ ] the duty to preserve evidence has not been triggered at the time the evidence was destroyed, then there can be no spoliation." *Kounelis*, 529 F. Supp. 2d 503 at 518.

Here, Plaintiffs claim that Defendant was under a duty to preserve the mat. In support of this contention, Plaintiffs argue that Defendant should have expected a lawsuit for three main reasons: (1) Home Depot is a sophisticated commercial establishment; (2) slip-and-fall incidents often lead to litigation; and (3) Home Depot opened an investigation after Plaintiff's alleged incident. *See* Mov. Br. at 19-27. However, the caselaw Plaintiffs rely on does not support this oversimplified analysis.

While courts consider all relevant facts, including those Plaintiffs identify, it is the review of a *combination of factors* that ultimately results in a spoliation

determination. To be sure, in *Nagy*, the court considered that Outback Steakhouse is "a sophisticated business entity" but plainly examined this factor in conjunction with "the circumstances and seriousness of Ms. Nagy's injuries." 2024 WL 712156 at *3. The same is true in *Bistrian*, where the opening of an investigation was just *one of* the factors considered. The *Bistrian* court explained that slip-and-fall incidents "predictably lead to a lawsuit" but this does not mean "the mere fact of a slip-and-fall [ ] is always enough to put defendants on notice of potential litigation and trigger a duty to preserve." 448 F. Supp. 3d at 469. Rather, the Third Circuit reasoned, "such an event *combined with other circumstances* may often be enough that defendants should reasonably anticipate litigation beginning soon after the incident itself." *Id*. (emphasis added).

Critically, the circumstances of Ms. Tattoli's fall were unlike those in the cases Plaintiffs rely on. The caselaw Plaintiffs point to involve situations where common sense would place a party on notice of probable litigation. For instance, in *Nagy*, the severity of plaintiff's injuries was immediately apparent as she "fell in Defendants' restaurant, was taken [sic] from the restaurant in an ambulance, and the next day a representative from [defendant] was advised that [plaintiff] was in the hospital awaiting surgery." 2024 WL 712156, at *3. In *Winters v. Textron, Inc.*, plaintiff endured a golf cart accident that "caused the steering wheel to spin uncontrollably and [ ] the spoke of the wheel ripped his fifth finger away from his hand." 187 F.R.D. 518, 519 (M.D. Pa. 1999). In *Bistrain*, plaintiff regularly threatened to sue while in

pretrial detention and was involved in an inmate-on-inmate attack that prompted a criminal investigation. 448 F. Supp. 3d at 471.

*Nagy*, *Winters*, and *Bistrain* are clearly distinguishable. Indeed, the facts of those cases are a far cry from what is alleged here, where the combination of circumstances does not suggest that litigation should have been foreseeable to Home Depot. Nothing Plaintiffs argue changes this result.

There is no dispute that Defendant was aware of Ms. Tattoli's injury soon after her fall and knew how the injury occurred. *See* Mov. Br. at 21. Defendant's employees confirmed that they witnessed Ms. Tattoli trip on an anti-gravity mat, (ECF No. 55-3), as well as "stumbl[e]" and make contact with a washing machine on display (*see* ECF No. 48-10 at 13-16). Defendant's employees also testified to noticing Ms. Tattoli had "a little bit of blood" and a "bump on her head after she was sitting there for a little bit." ECF No. 48-11 at 6-7.

However, there are other pertinent facts that are relevant to the analysis, which Plaintiffs neglect to mention let alone address in their briefing. For example, when asked whether Ms. Tattoli complained of pain, Ms. Jankowski testified, "[n]ot really, no." ECF No. 48-10 at 19. Ms. Tattoli was brought but declined ice and Christopher Lilly, Home Depot Customer Experience Manager, testified that he "asked her multiple times if she needed us to call an ambulance or family member to come pick her up and she declined every time." *Id.* at 20; ECF No. 48-11 at 8; ECF No. 55-5 at 7. After her fall, Ms. Tattoli was coherent, did not appear to be in any form of shock and was having fluent conversations. ECF No. 55-4 at 14-15; ECF No.

55-5 at 6. Ms. Tattoli even got up and walked to the front of the store without assistance so that Ms. Jankowski could finish processing her return. No. 55-4 at 15. And after Ms. Tattoli exited the store, Defendant did not hear anything more about the incident for weeks. In sum, these facts do not create nearly the same foreseeability of potential litigation as *Nagy*, *Winters*, and *Bistrain*, given the absence of an ambulance, the severing of a finger, or an actual threat to sue. *Nagy*, 2024 WL 712156, at *3; *Winters,* 187 F.R.D. at 519; *Bistrain*, 448 F. Supp. 3d at 471.

Accordingly, Plaintiffs' argument that Defendant had a preservation obligation based on Ms. Tattoli's injuries is unpersuasive. Mov. Br. at 21. Indeed, Defendant had no way of knowing the severity of Ms. Tattoli's injuries until March 8, 2022 when Mr. Lilly received a call "from the sheriff [ ] about her unfortunate passing," well after she fell in Defendant's store. Opp. Br. at 9, 21; ECF No. 55-5 at 12. And it was over another week after this phone call that Defendant received a preservation letter from Plaintiffs. ECF No. 55-6. Stated differently, it was not until March 16, 2022 that Defendant was put on notice that it needed to preserve anything due to the prospect of potential litigation. But by this point, Defendant already had disposed of the antifatigue mat as part of its standard policy and practice.

Plaintiffs' additional arguments are uncompelling. Plaintiffs make much of Defendant opening an investigation of the incident, arguing "[o]ne does not tag evidence . . . in the absence of an expectation of litigation" (Mov. Br. at 24). But Defendant counters with a response that the Court deems plainly credible given the facts here. Specifically, Defendant contends that this "was done in the usual course

11

of business . . . for any and all customer injuries, not only serious injuries." Opp. Br. at 23; ECF No. 48-11 at 23. Mr. Lilly testified that after Ms. Tattoli's fall, consistent with standard procedure, he submitted a claim form, which generated a claim number, and in response, Defendant's legal department contacted the store. ECF No. 48-11 at 58-59.[3] This, too, cuts against Plaintiffs' argument.

Moreover, Mr. Lilly testified that the mat was not a violation of Defendant's safety standards, nor has he ever considered it a safety issue. ECF No. 55-5 at 10-11. Frank Rochelle, Defendant's Operations Assistant Manager, echoed this sentiment. Indeed, he testified that he was not aware of any other situations where someone tripped over an antifatigue mat. ECF No. 67 at 4-5. Specifically, he stated, "[i]t's never been an issue prior . . . .  I've been in five stores and we've had them in location for five stores for 25 years." *Id*. at 8.

Having conducted the requisite fact-specific analysis, the Court does not find that Defendant should have reasonably anticipated litigation. The Court considers all relevant factors outlined in *Bistrian*, including what Defendant knew to be the type and seriousness of Ms. Tattoli's injury, how often similar kinds of incidents lead to litigation—slip and falls in general *and* slip and falls on Home Depot anti-gravity mats specifically, and the steps both parties took after Ms. Tattoli's fall, (*e.g.*, whether Defendant initiated an investigation into the incident). *See Bistrian*, 448 F. Supp. 3d

---

[3] Plaintiffs improperly cite *Bistrain* for the proposition that there exists a duty to preserve evidence based solely on the fact that an investigation was opened. Mov. Br. at 20, 24. Plaintiffs' interpretation of the case ignores all the other factors the *Bistrain* court considered and, as addressed above, no single factor is determinative in a spoliation analysis.

at 468. Taken together, it would not have been reasonable for Defendant to anticipate a lawsuit after Ms. Tattoli sustained what, at the time, seemed to be minor injuries, completed her transaction for a refund, and walked out of Defendant's store without help. That Defendant is a big box retailer does nothing to change these facts. Thus, Plaintiffs have failed to demonstrate that Defendant was under a preservation obligation.

### iv.  There Has Been No Suppression or Withholding.

### 1.  Negligence Is Not The Standard.

On the last spoliation element, "[t]o establish whether there has been actual suppression or withholding of the evidence, the Third Circuit requires a showing of intentionality and bad faith." *State Farm Fire & Cas. Co. v. Cohen*, 2020 WL 5369626, at *6 (E.D. Pa. Sept. 8, 2020) (citing *Bull*, 665 F.3d at 78-79). And it is critical that a court "not understate the importance of the bad faith requirement." *Id.* Indeed, "a finding of bad faith is pivotal to a spoliation determination." *Id.* (internal quotation marks omitted).

Plaintiffs asks the Court to ignore this precedent, insisting that ordinary negligence by itself is enough to find spoliation. Not so. This District has specifically found that "post-*Bull* [*v. United Parcel Serv., Inc.*, 665 F.3d 68 (3d Cir. 2012)], actual suppression requires more than ordinary negligence." *Lucia v. McClain & Co.*, 2013 WL 4517976, at *16 (D.N.J. Aug. 23, 2013). In *Mosaid*, for example, the court found that "negligent destruction of relevant evidence can be sufficient to give rise to the spoliation inference" and explained, "*[i]f a party has notice that evidence is relevant*

13

*to an action*, and either proceeds to destroy that evidence or allows it to be destroyed by failing to take reasonable precautions, common sense dictates that the party is more likely to have been threatened by that evidence." 348 F. Supp. 2d at 338 (emphasis added).

The decisions in *Paris Business Products, Inc. v. Genisis Technologies, LLC* and *Medeva Pharma Suisse A.G. v. Roxane Laboratories, Inc.* also are instructive. There the court quoted *Mosaid's* "notice" language and similarly found negligent destruction sufficient for spoliation. 2007 WL 3125184, at *3. But there is a common thread that both *Mosaid* and *Paris Business Products, Inc.* share that cannot be found here: notice of potential litigation at the time an item supposedly was spoliated. 2007 WL 3125184, at *3 (D.N.J. Oct. 24, 2007); 2011 WL 310697, at *14 (D.N.J. Jan. 28, 2011)

As discussed at length above (*supra* III.A.iii.), Home Depot did not have the requisite "notice that [the mat] would be relevant to an action" because it did not have notice that there would be an action at all. *See Mosaid*, 348 F. Supp. 2d at 338. To the contrary, Defendant had every reason to believe that Ms. Tattoli was fine and, after declining assistance and medical attention on multiple occasions, would not be pursuing litigation.

Plaintiff tries to make much of this issue, but the reasoning is not persuasive. Among other things, Plaintiff argues Mr. Rochelle cut and threw away the mat while having "full knowledge of the claim." (Mov. Br. at 30). This mischaracterizes the facts and overplays the use of the word claim. Plaintiff would have the Court believe that Defendant intentionally destroyed the mat after receiving notice of a potential claim

14

to prevent its use in future litigation. *See* Reply at 6. But that is not what occurred here. The "claim" that Plaintiffs are referring to is an internal Home Depot claim that has nothing to do with litigation or the potential for it. To that end, Mr. Rochelle's knowledge of this internal claim is vastly different from being placed on notice that the mat must be preserved because it is relevant to a legal action. *See* Sur-Reply at 3. Therefore, Plaintiffs' own argument demonstrates that negligence is not the standard here.

## 2. Plaintiffs Fail To Show Bad Faith.

Furthermore, Plaintiffs do not, and cannot, demonstrate that disposing the mat was a "nefarious plot to destroy evidence." *Orologio of Short Hills Inc v. The Swatch Grp. (U.S.) Inc.*, 653 F. App'x 134, 145 (3d Cir. 2016). Ms. Jankowski explained during her deposition that antigravity mats were placed in five locations throughout Defendant's store to create a surface softer than the concrete floor for employees to stand on in front of their kiosks. ECF No. 55-4 at 4-5. She testified that her mat was in front of her kiosk for "quite a few years" (*id*. at 4) and both Mr. Lilly and Mr. Rochelle testified that these mats had never been a problem in the past. ECF No. 55-5 at 10-11; ECF No. 67 at 8. Mr. Rochelle explained that the day after Ms. Tattoli's fall, he trimmed down and "reduced the depth" of Ms. Jankowski's mat to "try to accommodate the anti-fatigue" for her. ECF No. 52 at 9. Mr. Rochelle testified that his intent was to "react to the situation" and "exercise caution." *Id*. at 12-13.

15

Thereafter, Ms. Jankowski "didn't like it" and "disposed of it or brought it back to receiving." *Id.* at 14.[4]

Thus, the evidence suggests that Mr. Rochelle took precautionary steps in response to Ms. Tattoli's fall to prevent a similar incident from happening in the future. By the time Defendant learned of Ms. Tattoli's passing, ten days after she fell in the store, the mat was long gone—not because Defendant sought to "ensure[ ] that the mat would be forever unavailable," but because Defendant had already responded to the incident. ECF No. 55-5 at 12; Mov. Br. at 32. Consequently, the Court does not find that Defendant "cut the mat up" or "shredded it with a knife" with the requisite bad faith for a spoliation finding. Mov. Br. at 31-32.

In short, Plaintiffs have not satisfied two of the four elements necessary for a spoliation finding. Without showing that Defendant had an obligation to preserve the mat due to the foreseeability of litigation or that Defendant threw away the mat with an intent to deprive Plaintiffs of evidence, the Court finds Defendant did not destroy or spoliate the mat.

## B. Plaintiffs Have Not Shown Entitlement To Any Sanction.

Even if Plaintiffs had shown that the mat was spoliated, they nonetheless fail to demonstrate the appropriateness of any sanction. Plaintiffs seek to impose liability

---

[4] Ms. Jankowski testified that Ms. Tattoli's fall occurred on a Saturday and when she arrived at work the following Monday, the mat was gone. ECF No. 55-4 at 7. That Ms. Jankowski and Mr. Rochelle have differing recollections of who ultimately disposed of the mat is of no consequence. "[N]either supports an inference that the mat was discarded because there was a reasonable probability of litigation." Opp. Br. at 21.

against Defendant[5] and/or preclude Defendant's liability expert, and to impose an adverse inference. After a review of the "key considerations"[6] for determining a proper sanction, the Court finds Plaintiffs have not provided a sufficient basis for imposing any of the requested sanctions.

### i. Plaintiffs Have Not Shown Fault Or Prejudice.

As addressed more fully above (*supra* Section III.A.iv.), Plaintiffs have not demonstrated that Defendant discarded the mat in bad faith. Therefore, the Court is unable to attribute any fault to Defendant. Plaintiffs' repeated conclusory argument that there is "no question that Defendant intentionally destroyed and discarded the mat" remains unconvincing. Mov. Br. at 35. Nor have Plaintiffs sufficiently shown any prejudice from presenting their case without the mat. Both parties were plainly able to retain experts to opine on liability without the mat itself. Mov. Br. at 38. Thus,

---

[5] It is not clear from the motion what sanction Plaintiffs seek for "imposing liability" or "precluding [Home Depot's] defense on all aspects of liability." *See e.g.* Mov. Br. at 39, 42. To be sure, Plaintiffs highlight the possible sanctions "dismissal of a claim or granting judgment in favor of a prejudiced party; suppression of evidence; an adverse inference" (*id.* at 34) but do not provide an analysis under *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir.1984), which is required when a court is "asked to sanction a party by depriving that party of the right to proceed with or defend against a claim." *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 101 (D.N.J. 2006). Moreover, Plaintiffs address their request for the preclusion of liability together with their argument to exclude expert testimony. Mov. Br. at 39-41. Accordingly, the Court interprets Plaintiffs' motion as one seeking to exclude evidence—expert testimony, including testimony on liability—and for an adverse inference.

[6] *State Nat'l Ins. Co.*, 2011 WL 13257149, at *3 ("(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future").

how Defendant is benefitting from missing "the best evidence of the mat's characteristics and properties" (particularly where there is testimony that multiple of the same mats were placed throughout Defendant's store) remains unclear.

### ii. Plaintiffs Have Not Shown The Appropriateness of Either Proposed Sanction.

#### 1. The Court Declines To Exclude Evidence.

Plaintiffs seek to preclude Home Depot's expert from "testifying and imposing liability" at trial. Mov. Br. at 42. Plaintiffs fail to show that this sanction is warranted.

The suppression of evidence is a severe sanction to be imposed sparingly. *See Mosaid Techs. Inc.*, 348 F. Supp. 2d at 335. Here, Plaintiffs have provided neither a legal nor factual basis for imposing this severe sanction. Nor is the Court persuaded by Plaintiffs' conclusory, unfounded statements including, "[n]o lesser sanction than precluding its expert from testifying and imposing liability will offset the extreme unfair advantage Defendant gained by having destroyed the actual mat and proffered in its place expert testimony of its claimed lack of negligence and causation that Plaintiffs cannot sufficiently rebut." Mov. Br. at 39-40. As such, the Court declines to exclude evidence.

#### 2. Plaintiffs Are Not Entitled to An Adverse Inference.

Plaintiffs' alternative request for an adverse inference fares no better. An adverse inference can only arise "when the spoliation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent." *Bull*, 665 F.3d at 79. "No unfavorable inference arises when the circumstances indicate

18

that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995). For the reasons set forth above, the alleged destruction here was "a matter of [Defendant's] routine [practice]" where the Court cannot find "fraudulent intent." *See Bull*, 665 F.3d at 79.

Thus, the Court rejects Plaintiffs' contention that a jury should be permitted to make the "common sense observation" that the "destroyed or discarded evidence might or would have been unfavorable to the position of the offending party" (*supra* Section III.A.iv.). And Plaintiffs' assertion that "an adverse inference instruction is a relatively minor sanction" does nothing to move the needle. For these reasons, the Court declines to impose an adverse inference.

## IV.    CONCLUSION

Plaintiffs have presented arguments that fail to establish spoliation. The Court therefore finds that Plaintiffs have made an insufficient showing that any sanction would be appropriate here. Accordingly,

**IT IS** on this 3rd day of July 2025

**ORDERED** that Plaintiffs' motion for spoliation sanctions (ECF No. 48) is **DENIED**; and it is further

**ORDERED** that the Clerk is to terminate ECF No. 48.

s/ Justin T. Quinn
HON. JUSTIN T. QUINN
United States Magistrate Judge

19